IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:11CR3038 |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND ORDER ON THE |
| | ) | PLAINTIFF'S MOTION FOR UPWARD |
| v. | ) | DEPARTURE AND THE PLAINTIFF'S |
| | ) | OBJECTION TO THE SECOND REVISED |
| JOEL L. WITT, | ) | PRESENTENCE INVESTIGATION |
| | ) | REPORT |
| Defendant. | ) | |
| | ) | |

On April 20, 2011, a two-count indictment was filed against Defendant Joel L. Witt. (ECF No. 2.) Count I charges that Witt, "by force, violence, and intimidation, did take from the person and presence of another, money in the amount of approximately $11,576.00 belonging to and in the care, custody, control, management, and possession of the Pioneer Community Federal Credit Union in Palisade, Nebraska, . . . and in committing such offense . . . Witt . . . did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm," in violation of 18 U.S.C. §§ 2113(a) and (d). Count II charges that Witt "knowingly used, carried, and brandished a firearm, to wit: a semi-automatic assault weapon, during and relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit: Bank Robbery, as described in Count I above," in violation of 18 U.S.C. § 924(c)(1)(A) and (B). On November 14, 2011, Witt entered a plea of guilty on both counts, but he reserved the right to appeal the decision denying his motion to suppress. (See ECF Nos. 59-60, 62.)

On January 26, 2012, U.S. Probation Officer Julie S-Voss submitted to the court a Second Revised Presentence Investigation Report. In this report, the probation officer determined that the Base Offense Level for Count I was 20 (citing U.S.S.G. § 2B3.1(a)); she then increased the offense level by 2 levels pursuant to U.S.S.G. § 2B3.1(b)(1) and by one additional level pursuant to U.S.S.G. § 2B3.1(b)(7)(B), yielding an Adjusted Offense Level of 23. She reduced Witt's Adjusted Offense Level by three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)-(b), which resulted in a Total Offense Level of 20 for Count I. As to Count II, the probation officer found that

1

Witt should receive a 10-year sentence that must be served consecutively to the Count I sentence. See 18 U.S.C. § 925(c)(1); U.S.S.G. § 2K2.4(b).

The government has filed an objection to the Second Revised Presentence Investigation Report, arguing that the probation officer should have increased Witt's Adjusted Offense Level for Count I pursuant to U.S.S.G. § 2B3.1(b)(2)(F) because "Witt's comments and actions toward the two victim tellers . . . put them in fear of their lives." (Pl.'s Br. Supp. Objection at 2, ECF No. 66.)[1] In addition, the government filed a motion for an upward departure on the ground that there were "multiple victims involved in the credit union robbery . . . who were subjected to substantial risk of death or serious bodily injury during Defendant Witt's commission of the offense." (Pl.'s Mot. for Upward Departure at 1, ECF No. 67 (citing U.S.S.G. § 5K2.0(a)(1)(A)).) My analysis of the government's objection and motion for an upward departure follows.[2]

## I. The Government's Objection to the Second Revised Presentence Investigation Report

As noted above, the government argues that Witt's Adjusted Offense Level for Count I should be increased pursuant to U.S.S.G. § 2B3.1(b)(2)(F). Section 2B3.1(a) states that the Base Offense Level for Robbery is 20, and section 2B3.1(b) provides that the Base Offense Level must be increased when certain "Specific Offense Characteristics" are present. Section 2B3.1(b)(2) states,

> (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished, or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels.

The government claims that a two-level increase is warranted under subpart (F) because Witt made comments and took actions that put two bank tellers in fear of their lives. More specifically, the government states,

---

[1] At the time the government filed this objection, a previous version of the Presentence Investigation Report was operative. However, the government renewed its objection after reviewing the Second Revised Presentence Investigation report. (See ECF No. 74.)

[2] Witt, through counsel, has filed a motion for a variance or downward departure based on "the nature and circumstances of the offense and the history and characteristics of the defendant." (Def.'s Br. Supp. Variance at 1, ECF No. 73 (emphasis omitted). See also Def.'s Mot. for Variance, ECF No. 72.) The defendant's motion is not addressed in this memorandum.

2

> When he entered the Pioneer Community Federal Credit Union in Palisade, Nebraska, a rural community in Hitchcock County of approximately 350 residents, Defendant Witt approached the teller counter and operated the slide on the AR-15 semi-automatic assault rifle he carried, placing a round of ammunition in the chamber of the weapon. Patty Anderjaska, the teller behind the counter, saw Defendant Witt point the weapon at her and state: "I need money. Give me your money[,]" or something similar, which made Anderjaska fear for her life.
>
> A second employee, Tonya Placzek, saw Defendant Witt enter the credit union building carrying a rifle over his shoulder. Despite being in fear for her safety, she moved from her office to the teller window close to Anderjaska and saw Witt point the weapon in Anderjaska's direction and state: "Give me all your money. Hurry up. Give me it all."

(Pl.'s Br. Supp. Objection at 2-3, ECF No. 66.) The foregoing account is consistent with the summaries of Anderjaska's and Placzek's interviews that appear in the FBI's investigation reports. (See Index, Exs. 1-2, ECF No. 65.)

The evidence before me in the Second Revised Presentence Investigation Report and offered and received at the sentencing hearing persuades me that Witt's statements and actions, taken together, amount to a "threat of death" within the meaning of section 2B3.1(b)(2)(F). Section 2B3.1, Application Note 6, states,

> "A threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. Accordingly, the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply. For example, an oral or written demand using words such as . . . "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)" . . . would constitute a threat of death. The court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill a reasonable person, who is a victim of the offense, a fear of death.

In the instant case, statements such as "Give me your money," coupled with the "cocking" and aiming of the assault rifle at the teller, seem to satisfy this definition of a "threat of death." Thus, if section 2B3.1(b)(2)(F) is applicable, Witt's offense level probably should be increased by two levels.

Citing U.S.S.G. § 2K2.4, Application Note 4, the probation officer concluded that section 2B3.1(b)(2)(F) does not apply in this case. In pertinent part, that note states,

3

> Weapon Enhancement. – If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under 1.3 (Relevant Conduct). . . .

In Witt's case, the sentence to be imposed under U.S.S.G. § 2K2.4 will be "imposed in conjunction with a sentence for an underlying offense." Therefore, "specific offence characteristics for possession, brandishing, use, or discharge of an explosive or firearm" cannot be applied when determining the sentence for Witt's underlying robbery offense. The question, it seems, is whether an enhancement based on Witt's "threat of death" would amount to a "weapon enhancement for the underlying offense of conviction." If so, the two-level increase called for in section 2B3.1(b)(2)(F) should not be applied (as the probation officer concluded); if not, the two-level increase should be applied (as the government advocates).

Courts, including the Eighth Circuit,[3] have uniformly held that if a defendant who has been convicted under both 18 U.S.C. § 924(c) and the underlying robbery offense makes a firearm-related threat during the course of the robbery, the section 2B3.1(b)(2)(F) "threat of death" enhancement cannot be applied to the sentence for the robbery. See United States v. Triplett, 104 F.3d 1074, 1081-82 (8th Cir. 1997). See also, e.g., United States v. Monghan, 409 F. App'x 872, 878 (6th Cir. 2011) (citing U.S.S.G. § 2K2.4, comment 4 and holding that it was plain error for the district court to apply the two-level threat of death enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F) "because the threat was firearm-related and Monghan was also convicted under 18 U.S.C. § 924(c)"); United States v. Katalinic, 510 F.3d 744, 745-48 (7th Cir. 2007); United States v. Hazelwood, 398 F.3d 792, 799-800 (6th Cir. 2005) (holding that the threat of death enhancement may not be applied where defendants made verbal threats while brandishing guns and were also convicted under § 924(c));

---

[3] It should be noted that the Eighth Circuit's case involved a previous version of the Sentencing Guidelines; however, the Fourth, Sixth and Seventh Circuits have specifically held that recent amendments to the guidelines do not alter its analysis of this question. See United States v. Katalinic, 510 F.3d 744, 745-48 (7th Cir. 2007); United States v. Hazelwood, 398 F.3d 792, 799-800 (6th Cir. 2005); United States v. Reevey, 364 F.3d 151, 158-59 (4th Cir. 2004).

United States v. Reevey, 364 F.3d 151, 158-59 (4th Cir. 2004) ("The relevant inquiry . . . is whether the threat-of-death enhancement was applied 'for possession, brandishing, use, or discharge of an explosive or firearm.'");[4] United States v. Franks, 230 F.3d 811, 813-14 (5th Cir. 2000); United States v. Duran, 4 F.3d 800, 804 (9th Cir. 1993). Indeed, the government concedes that "if the threat of death is related to the possession, use, or discharge of the firearm for which [the defendant] was convicted under Section 924(c)," the threat "may not be used to enhance a defendant's sentence under Section 2K2.4." (Pl.'s Br. Supp. Objection at 4, ECF No. 66.) The government argues, however, that this rule does not apply in the instant case because "Witt did not expressly threaten to shoot, kill, or harm the tellers." (Id. at 5.) It adds, "[The tellers'] fear arose from many factors other than the presence of a firearm, including their presence in a small credit union facility in a remote community far from law enforcement or other assistance; Witt's appearance before them in a hooded sweatshirt, mask and gloves; his demand for the victim-tellers to give them [sic] money from the teller counter drawers and vault; and Witt's shoving a bag at them to fill it with money." (Id.)

The government's argument will be rejected. In the first place, if the government's theory were adopted, an "express threat" to shoot, kill, or harm bank tellers would result in a less severe punishment than the sort of "implied threat" that, according to the government, was created by the circumstances surrounding the robbery in this case. It is unlikely that the threat of death enhancement is meant to be applied in such a counterintuitive fashion. Secondly, and as noted above, a "threat of death" for the purposes of section 2B3.1(b)(2)(F) is defined as an "oral or written statement, act, gesture, or combination thereof." It is neither logical nor permissible to define the "threat of death" as stemming from contextual factors such as the isolated location of the credit union. Furthermore, the government's suggestion that Witt's appearance, words, and use of a bag amounted to a "threat of death" standing alone–that is, without the use of the assault rifle–is simply unpersuasive. The threat of death in this case is clearly related to Witt's use of the assault rifle: without the weapon, there is no "threat of death" within the meaning of section 2B3.1(b)(2)(F).

---

[4] The underlying offenses in Reevey were kidnaping and carjacking rather than bank robbery.

Therefore, because Witt has already pleaded guilty to the § 924(c) charge, his sentence for the bank robbery cannot be enhanced under section 2B3.1(b)(2)(F).

The government also suggests that the plain language of U.S.S.G. § 2K2.4, Application Note 4, "applies only to explosive or weapon enhancements relating to 'possession, brandishing, use or discharge of an explosive or firearm, not to a defendant's threat of death made to a victim in the course of a robbery." (Pl.'s Br. Supp. Objection at 4, ECF No. 66.) It adds, "The two-level 'threat of death' enhancement should not be excluded from application in this case simply because it appears as sub-section (F) of U.S.S.G. § 2B3.1(b)(2), together with other enhancements related to the use of firearms or other dangerous weapons." (Id.) It may well be possible to apply the enhancement if a robber's death threat is unrelated to the possession, use, brandishing, or discharge of a firearm. See United States v. Triplett, 104 F.3d 1074, 1082 (8th Cir. 1997) ("On remand, the District Court, if it elects to enhance Steven's sentence based on subsection (F), should clarify that the conduct on which it bases this enhancement is not firearm related."). Because the threat of death in this case clearly relates to the possession, use, and brandishing of an assault rifle, however, the two-level threat of death enhancement cannot be applied.

The probation officer's analysis is sound. Witt's offense level should not be increased under U.S.S.G. § 2B3.1(b)(2)(F), and the government's objection to the Second Revised Presentence Investigation Report will be overruled.

## II. The Government's Motion for Upward Departure

Citing U.S.S.G. § 5K2.0(a)(1), the government has moved for an upward departure because this case involves "aggravating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Sentencing Guidelines." (Pl.'s Mot. for Upward Departure at 1, ECF No. 67.) More specifically, it states that "the upward departure is supported by the circumstance of multiple victims involved in the credit union robbery . . . who were subjected to substantial risk of death or serious bodily injury during Defendant Witt's commission of the offense." (Id.) It adds that "[n]either U.S.S.G. § 2B3.1, relating to the robbery, nor § 2K2.4, relating to the use of a weapon during and in the course of a crime of violence, consider the circumstances of the instant case as they relate to the two teller-victims." (Pl.'s Br. at 3, ECF No. 68.)

Section 5K2.0(a)(1)(A) states, "The sentencing court may depart from the applicable guideline range if . . . the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." See also 18 U.S.C. § 3553(b)(1) ("[T]he court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.").

Some of the "kinds" of circumstances that may not have been adequately taken into consideration have been identified and listed in Chapter Five, Part K, Subpart 2 of the guidelines. See U.S.S.G. § 5K2.0(a)(2)(A). One of these listed circumstances is particularly relevant in this case. Section 5K2.6 states, "If a weapon . . . was used . . . in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others." (emphasis added).

The evidence before me shows that Witt used a firearm under circumstances that endangered more than one person. I agree with the government that "the risk of death or bodily injury to more than one victim" has not been fully accounted for in sections 2B3.1 and 2K2.4 of the guidelines, and therefore this risk constitutes the sort of aggravating circumstance that can justify an upward departure. Nevertheless, I find that no upward departure is warranted in this case. I note in passing that, according to the FBI's reports, one of the two victims left her office and joined the teller who was being confronted by Witt at the outset of the robbery. (See ECF No 65.) This brave act may have placed her at greater risk for injury than she might have faced had she remained in her office. I do not mean to suggest that she is somehow at fault for taking this action, and I certainly do not mean to suggest that the danger she faced was in any sense self-inflicted. I say only that a departure beyond the guideline range is not appropriate, in my view, under the circumstances presented here.

IT IS ORDERED that the Plaintiff's Motion for Upward Departure, filing 67, is denied, and the Plaintiff's Objection to the Second Revised Presentence Investigation Report, filing 64, is overruled.

Dated February 14, 2012.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge